IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SARAH B.,[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 3:20-cv-01224-MC

OPINION AND ORDER

**[2]ALJ: Why did you stop going to high school and get a GED.**
**A: I had—I just have a hard time being around people. That's when things started—**
**ALJ: Okay. Obviously, you were dating or something at that point, right?**
**A: Dating?**
**ALJ: Well, you had a baby that is nine months old, right?**
**A: Yeah**
**ALJ: Didn't adopt the baby?**
**A: No. I'm—**
**ALJ: So you were going out with the father of the baby?**
**A: No, I was not going out with him.**
**ALJ: I assume it was a biological child?**
**A: Yeah.**
**ALJ: Didn't artificial inseminate?**
**A: Yeah. I mean I—**
**ALJ: Okay. So you were dating that person?**
**A: No. I was not.**
**ALJ: All right. I assume you can read, write, add and subtract?**

**ALJ: Obviously, you cook.**

**ALJ: Are you nursing or using a bottle?**

**ALJ: Oh, you had a boyfriend.**

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party.
[2] The following excerpts are from the oral hearing transcript located in the Transcript of Social Security Administrative Record (ECF No. 9) at pages 37–89.

1 – OPINION AND ORDER

**ALJ: How did you meet your boyfriend?**
**A: Hanging out.**
**ALJ: Hanging out where?**

**ALJ: So how many boyfriends would you say you had after that?**

**ALJ: So when you were at the river were you wearing jeans or were you in a bathing suit?**

**ALJ: So how did you meet your second boyfriend?**
**A: What do you mean?**
**ALJ: Well you must have met him somewhere like the movies, a dance, you were hanging out at the river. How did you meet your second boyfriend?**
**A: Just online.**
**ALJ: Online. So you went online, dating?**
**A: Yeah.**
**ALJ: So that means you were trying to meet somebody who you wanted to date, right?**
**A: Yeah, I got bored.**
**ALJ: So you got bored and you decided you wanted to meet somebody. So you met this person online, I assume, and then did you go somewhere, like the movies, dancing?**
**A: I just had him come to my house.**
**ALJ: He came over. Okay. And so how long did you—**
**A: Oh, I'm shaking.**

**ALJ: So let me get this right.  When you're with your baby at your house and you say you're having hallucinations you can be a good mom and never have a problem with that?**

**ALJ: When you're—you told me you were hallucinating, so that would make you an unsafe mom.**
**A: Hallucinating does not mean I'm unsafe, I'm okay. I've—it's been going on for me for a long time. It's—**
**ALJ: So you can hallucinate and watch a minor child?**
**A: Yeah, it's—**
**ALJ: Well then why can't you work, ma'am?**

**ALJ: You sort of have no problem answering your attorney's questions but when I ask you these questions you do this, so I need you to focus—the same way you focus when your attorney was asking questions.**

**ALJ to attorney:  I need her to start responding like she's responding to you. And I'm having a tough time with this.**

**A: I can't think. I'm concerned—I can't feel my hands.**

2 – OPINION AND ORDER

> **ALJ: Well you can have a drink of water, ma'am.**
> **Atty: Can we take a short break, Judge?**
> **ALJ: We can or we can continue the hearing in a few months if you want.**
> **Atty: That's not what I meant.**
> **ALJ: Well I need her to start responding like she's responding to you.**
>
> **A: I don't—I'm sorry. I don't know why I'm nervous.**
> **ALJ: We'll take a short break but I'm about this close to waiting three months to have another hearing.**
>
> **A: Am I doing something wrong?**

**MCSHANE, JUDGE:**

The basic hallmark of a hearing is the right to be heard and, in the context of a quasi-judicial hearing involving non-governmental actors, the right to be heard with dignity and respect. Plaintiff's August 22, 2019, social security hearing was neither of these things.

As is the case with judges in both the federal and state courts, administrative law judges have the difficult job of dealing with people who are suffering. The citizens who come before us often present as broken vessels, fractured from years of mental illness, drug addiction, cognitive delays, trauma, and physical disabilities. With the heavy dockets and deadlines judges face, it is often difficult to see, let alone connect with, the shared humanity that exists with those who come before us. We all have bad days, myself included, and it is no wonder that years of exposure to this brokenness can lead to cynicism and burnout.

It is difficult to read the transcript of the August 22 hearing, however, and not be embarrassed for our legal system. Plaintiff is not a sophisticated individual and she presents with a limited education. She suffers from schizophrenia and trauma/post-traumatic stress disorder. She is taking powerful antipsychotic medication. She is a single mother who struggles to get out of the house. She has no adult support in her life besides her own mother. She does not respond

well to pressure, and she was rightfully anxious when interrogated by the ALJ. The environment of an administrative hearing is foreign to her.

Certainly, the ALJ would not be doing the job he was appointed to without carefully dissecting Plaintiff's claims under the bright light of examination. If he were required to accept at face value everything presented to him, there would be no need for a hearing. But here the instrument used was blunt and unkind.

Plaintiff rarely had a chance to answer a question, let alone explain herself. She was constantly interrupted by the ALJ. Indeed, most of the time, the ALJ simply began with an assumption and never allowed Plaintiff to finish an answer inconsistent with what the ALJ had predetermined. For instance, in his need to establish that Plaintiff was doing well as a full-time mom (and therefore she is presumably capable of work), the ALJ cut off Plaintiff's response and would change the subject:

> **A: Like my mom, she'll come in and just kind of—it's just hard to do everything—**
> **ALJ: Well probably most full times would say that.**
> **ALJ: But I'm just asking if you're—so the juvenile authorities aren't intervening. Nobody, other than your mom, coming over to help you.**
> **A: Besides the ACT Team. And then I had a girl coming twice a week for a couple—**
> **ALJ: Okay.**
> **ALJ: Are you using marijuana?**

At another point, the ALJ seemed to have no interest in the symptoms that Plaintiff was attempting to explain; instead, cutting her off and again changing the subject.

> **ALJ: Any problems lifting, walking, sitting?**
> **A: Not unless I'm having symptoms then I—**
> **ALJ: Not unless what?**
> **A: I'm having symptoms. I mean, no I don't have—**
> **ALJ: You don't like have a bad back or—**
> **A: No.**
> **ALJ: Or broken arm? Do you have any friends?**

4 – OPINION AND ORDER

Other questions, although I'm sure designed to get at the details of Plaintiff's daily activities, seemed inartful, misogynistic, and downright creepy. If Plaintiff were a man, I wonder if he'd be asked what clothes he wore to the beach, whether he breast fed a baby, how he meets women, or whether he was dating a woman that he had had sex with. Even if these questions had some relevance, the overall tenor was confrontive, dismissive, and inappropriate.

It is no wonder that Plaintiff responded the way she did during this staccato of questions, insults, and interruptions (although she was trying to explain herself). If in fact the ALJ desired to have Plaintiff respond in the same manner Plaintiff responded to questions from her attorney, he should have taken a cue from the attorney and asked his questions with a calm and respectful deliberateness. Instead, he fired confusing volleys at Plaintiff and then expressed his amazement at her inability to stay focused. A judge cannot create a hostile environment and expect everyone to remain calm no more than a parent can slap a child and expect it not to cry. And here it was no secret to the ALJ that the coping skills and anxiety issues of Plaintiff were severely limited.

It is not my desire to critique judicial performance in every transcript that I read. I know that my approach to a hearing can be very different than that of my colleagues. That said, I do not believe that Plaintiff was given an opportunity to adequately explain her limitations at the hearing. There is a threshold of judicial behavior that, when crossed, diminishes due process. This happened here.

In addition to the deficiencies of the hearing, the Court finds that the ALJ erred by (1) discrediting Plaintiff's symptom testimony and (2) discrediting the opinions of Plaintiff's therapist, Kerry Hammerschmith, LCSW. The Court further finds that the new evidence from Chad Sawyer, NP, submitted after the ALJ's decision, is persuasive. Accordingly, because the Commissioner's decision is not supported by substantial evidence, and the record reveals

Plaintiff is disabled under the Act, the Commissioner's decision is REVERSED and this case is REMANDED for immediate calculation and payment of benefits.

## STANDARD OF REVIEW

The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). A reviewing court affirms the Commissioner's decision if it is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, the Court reviews the entire administrative record, weighing both the evidence that supports and detracts from the ALJ's decision. *Davis v. Heckler*, 868 F.2d 323, 326 (9th Cir. 1989).

## DISCUSSION

The Social Security Administration uses a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920 (2021). The burden of proof rests on the claimant for steps one through four and on the Commissioner for step five. 20 C.F.R. § 404.1520; *Bustamante v. Massanari*, 262 F.3d 949, 953–54 (9th Cir. 2001). At step five, the Commissioner must show that the claimant can adjust to other work existing in significant numbers in the national economy after considering the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v); *Tackett v. Apfel*, 180 F.3d 1094, 1100–01 (9th Cir. 1999). If the Commissioner fails to meet this burden, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

Here, the ALJ at step two found that Plaintiff had schizophrenia and PTSD. Tr. 22.[3] The ALJ found that

> [Plaintiff] has the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations: [Plaintiff] is limited to jobs not exceeding SVP 2, entry level jobs

---
[3] "Tr." refers to the Transcript of the Social Security Administrative Record provided by the Commissioner.

6 – OPINION AND ORDER

>typical of a person with a high school diploma or GED; public contact is limited to superficial and co-worker contact is limited to occasional; and the claimant is limited to jobs with a regular routine that are not fast-paced.

Tr. 24. Based on the vocational expert's testimony, the ALJ concluded Plaintiff could perform three jobs that exist in significant numbers in the national economy. Tr. 30. The ALJ thus determined that Plaintiff was not disabled. *Id*.

**I. Plaintiff's Symptom Testimony**

Plaintiff argues that the ALJ erred by not fully crediting her subjective symptom testimony as true. Pl.'s Br. 9, ECF No. 10. Absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of her symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

Plaintiff alleges various debilitating mental symptoms, including visual and auditory hallucinations, terror, and fear of leaving her home. Pl.'s Br. 6. Plaintiff sought treatment in 2010, reporting that she was "seeing things" and "living in constant panic." Tr. 392. At that time, Plaintiff was given a provisional diagnosis of Psychotic Disorder, Not Otherwise Specified, which was later diagnosed as Schizoaffective Disorder, Bipolar type with PTSD symptoms. Tr. 390, 695. Plaintiff stated that she believes others can read her thoughts. *See e.g.*, tr. 545, 578, 619, 703, 730, 744. Plaintiff also reported insomnia and nightmares because of her paranoia. *See e.g.*, tr. 535, 578, 582, 690, 695, 730. Plaintiff experiences instances where she feels like she is asleep, but is in fact awake and re-experiencing sexual abuse that she was subjected to as a child by her babysitter. Tr. 695.

The ALJ first discounted Plaintiff's testimony because "she has no difficulties caring for her infant son." Tr. 24–25. In regard to her son, Plaintiff testified, when allowed, that she had

7 – OPINION AND ORDER

"really been struggling" and that she depended on support from her mother and another woman in order to maintain her home and care for her son. Tr. 50, 62–63. Plaintiff further requires additional support from the Polk County Behavioral Health Assertive Community Treatment ("ACT") team to help care for her son. Tr. 49, 53, 354, 652. The ACT program supports severe and persistent mentally ill individuals who struggle with traditional treatment expectations. *See* tr. 771. Plaintiff indicated that the ACT team assists her with shopping, cooking, and transporting her son to medical appointments. Tr. 652. Plaintiff testified that she does not leave her home unless accompanied by a member of the ACT team. Tr. 59. Before receiving this support, Plaintiff reported that caring for a small child was "overwhelming [on] most days." Tr. 652. The ALJ's conclusion that Plaintiff has "no difficulties" caring for her son is therefore not supported by substantial evidence in the record.

The ALJ next discounted Plaintiff's testimony because "the overall severity of her symptoms has improved with treatment." Tr. 25. The ALJ's conclusion relied on notes from Chad Sawyer, NP, who evaluated Plaintiff from 2015 to 2019. Tr. 26–27. Mr. Sawyer's treatment notes consistently observed that Plaintiff's thought content was "both psychotic and reality based." Tr. 27, 703. On April 11, 2019, less than six months before Plaintiff's hearing before the ALJ, Mr. Sawyer described Plaintiff's thought content as significant for near constant hallucinations. Tr. 28, 666.

The ALJ appears to have selected certain observations from Mr. Sawyer's notes to support his conclusion that Plaintiff improved, while failing to address observations that suggest otherwise. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working."). Mr. Sawyer's notes—when read in context of

8 – OPINION AND ORDER

the overall diagnostic picture he drew—reveal that Plaintiff continued to suffer from psychotic thought content and hallucinations throughout her treatment. *See id.* (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) ("[The treating physician's] statements must be read in context of the overall diagnostic picture he draws."). Additionally, Plaintiff has been enrolled in the ACT program since March of 2017, tr. 529, which suggests not only that Plaintiff has not improved, but that her mental health condition has worsened since its onset in 2010.

Because the ALJ's reasons are not supported by substantial evidence in the record, the ALJ improperly discredited Plaintiff's symptom testimony.

## II. Kerry Hammerschmith, LCSW

Plaintiff next argues that the ALJ failed to articulate specific and legitimate reasons when finding Ms. Hammerschmith's opinions unpersuasive. Pl.'s Br. 8–11.

Under the current regulations, an ALJ must evaluate all medical opinions and prior administrative medical findings for persuasiveness. In doing so, an ALJ considers the following factors: (1) supportability; (2) consistency with the record as a whole; (3) the relationship between the source and the claimant; (4) specialization; and (5) other factors, including the source's familiarity with other information in the record. 20 C.F.R. § 416.920c(c). Of these, supportability and consistency are the most important and must be articulated in the ALJ's decision. 20 C.F.R. § 416.920c(b)(2).[4] Further, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior

---

[4] The Ninth Circuit has not issued an opinion regarding the effect of the new 2017 SSA regulations on the "specific and legitimate" standard articulated in *Orn*. *See Robert S. v. Saul*, No. 3:19-cv-01773, 2021 U.S. Dist. LEXIS 65231, at *4 (D. Or. Mar. 3, 2021), report and recommendation adopted, 2021 U.S. Dist. LEXIS 59635 (D. Or. Mar. 29, 2021) (collecting cases). However, other Ninth Circuit district courts have held that under the new SSA regulations the "specific and legitimate" standard is still applicable as the standard against which the Court evaluates the ALJ's reasoning. *See John N. v. Comm'r Soc. Sec. Admin.*, No. 20-cv-01273, 2022 U.S. Dist. LEXIS 35027, at *17–18 (D. Or. Feb. 28, 2022) (citing *Scott D. v. Comm'r Soc. Sec. Admin.*, No. C20-5354, 2021 U.S. Dist. LEXIS 4083, at *4 (W.D. Wash. Jan. 8, 2021)).

9 – OPINION AND ORDER

administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a).

Ms. Hammerschmith's October 23, 2017, letter indicated that Plaintiff "struggles with focus, anxiety, fear, paranoia and hallucinations" even when compliant with her medication. Tr. 28, 634. She concluded that Plaintiff was incapable "of sustaining employment for any length of time due to her mental health symptoms." Tr. 634. Ms. Hammerschmith's August 21, 2019, assessment of Plaintiff's mental functioning concluded that Plaintiff would be forced to miss four or more days of work each month due to her symptoms, and that she was severely limited in interacting with others. Tr. 29, 763, 765. The ALJ found these opinions not persuasive as "internally inconsistent and not supported by the overall evidence of record." Tr. 28–29. The ALJ noted that

> [a]lthough Ms. Hammerschmith has had the opportunity to evaluate the claimant multiple times since she first saw the claimant in 2011, her statements are not consistent with the treatment notes from Polk County Behavioral Health, which demonstrate that when the claimant began taking her psychotropic medication regularly, she experienced improvements in her paranoia.

Tr. 28. The ALJ found that some of Ms. Hammerschmith's limitations for Plaintiff contradicted each other, including serious limits sustaining an ordinary routine and maintaining attention but only slight limits understanding and carrying out simple instructions. Tr. 29.

As explained above, the overall record does not reflect improvement in Plaintiff's symptoms with treatment. Regarding internal inconsistency, it is unclear to the Court how a serious limitation in one category of mental functioning contradicts a slight limitation in another category. The ALJ's proffered reasons of internal inconsistency and lack of support in the record in discounting Ms. Hammerschmith's opinions are therefore unfounded.

Because the ALJ's reasons are not supported by substantial evidence in the record, the ALJ improperly discredited Ms. Hammerschmith's opinions.

**III. New Evidence**

After the ALJ issued a decision, Plaintiff submitted an additional mental functioning assessment from Mr. Sawyer conducted on October 25, 2019. Tr. 12–16. The parties agree the assessment is part of the administrative record for the Court's review. Tr. 2; Pl.'s Br. 26; Def.'s Br. 18, ECF No. 11; *see Brewes v. Comm'r Soc. Sec. Admin.,* 682 F.3d 1157, 1163 (9th Cir. 2012). Mr. Sawyer opined that Plaintiff is "not able to function independently, appropriately, effectively, and on a sustained basis" relating to her ability to interact with others, adapt, or manage herself in workplace settings. Tr. 12–13. He indicated that Plaintiff's symptoms would require her "to disengage from productive activity for unscheduled breaks beyond the standard . . . breaks." Tr. 14. Finally, Mr. Sawyer concluded that Plaintiff would miss at least four days of work per month as a result of her symptoms. Tr. 15.

The Commissioner argues that the ALJ's decision remains supported by substantial evidence even considering Mr. Sawyer's assessment because his assessment "lack[s] support in the record and [is] inconsistent with his own findings." Def.'s Br. 19. The Commissioner contends that Mr. Sawyer previously noted "mild to moderate limitations and non-compliance with medication treatment plan." *Id.* Similar to the ALJ's assessment of Mr. Sawyer's treatment notes, the Commissioner fails to adequately capture the overall diagnostic picture Mr. Sawyer provided, which reflects consistent paranoia, hallucinations, and psychotic thought content from Plaintiff. The Court fails to see any inconsistency between Mr. Sawyer's treatment notes and his new assessment. Rather, the assessment simply expands on and clarifies Mr. Sawyer's prior treatment

notes, adding more detail relevant to Plaintiff's ability to work considering her mental health functioning.

In light of Mr. Sawyer's post-hearing assessment, and because the ALJ erred by discrediting Plaintiff's symptom testimony and Ms. Hammerschmith's opinions, reversal of the Commissioner's final decision is warranted. The only remaining question is whether to remand for further administrative proceedings or an award of benefits. The general rule is to "remand to the agency for additional investigation or explanation." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012). An award of benefits can be directed, however, "where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Remand for calculation of benefits is only appropriate where the credit-as-true standard has been satisfied, which requires:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison*, 759 F.3d at 1020.

This is a rare instance where remand for an award of benefits is appropriate as Plaintiff satisfies all three requirements. The record is fully developed and there are no ambiguities that further administrative proceedings need resolve. As explained above, the ALJ failed to provide sufficient reasons to discount Plaintiff's symptom testimony and Ms. Hammerschmith's opinions. Credited as true, the testimony and opinions, combined with Mr. Sawyer's post-hearing assessment and the vocational expert's testimony, establish that Plaintiff is disabled under the Act.

The vocational expert testified that an individual who is absent for two or more days per month and off task more than 20% in a workday is unemployable in the national economy. Tr. 83, 87. Both Ms. Hammerschmith and Mr. Sawyer opined that Plaintiff would miss four or more days

12 – OPINION AND ORDER

of work due to her symptoms and require additional unscheduled breaks from productive activity during the workday. Tr. 14–15, 770–71. Because Plaintiff would miss two of more days of work per month and require unscheduled breaks affecting her productivity, she is unemployable in the national economy, and therefore disabled under the Act. Further, consideration of the record as a whole convinces the Court that Plaintiff is disabled. The Court sees no purpose for further proceedings.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED and this matter is REMANDED for immediate calculation and payment of benefits.

IT IS SO ORDERED.

DATED this 30th day of March, 2022.

                                                        __s/Michael J. McShane_____
                                                        Michael J. McShane
                                                        United States District Judge